IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| WILLIAM B.,[1] | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | )   Case No. 3:23-cv-37-RCY-SLS |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| *Defendant*. | ) |
| | ) |

**REPORT AND RECOMMENDATION**

In this action, Plaintiff William B. seeks review of the Commissioner ("Commissioner") of the Social Security Administration's ("SSA") decision to deny Plaintiff's Title XVI application for Supplemental Security Income ("SSI"). This matter now comes before the Court for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) on the parties' cross-motions for summary judgment. (ECF Nos. 12, 13.) The motions have been fully briefed, rendering this matter ripe for review.

Plaintiff requests that the Commissioner's decision be vacated and remanded for a *de novo* hearing and new decision. (Plaintiff's Opening Brief at 10 (ECF No. 12) ("Pl.'s Mem.").) As the basis for such relief, Plaintiff argues that the Administrative Law Judge's ("ALJ") decision is not supported by substantial evidence because he improperly evaluated the medical opinion of Plaintiff's treatment provider, Dr. Thomas Veech. (Pl.'s Mem. at 5-10.) Specifically, Plaintiff

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

argues that the ALJ failed to explain why he found Dr. Veech's opinion not supported by and inconsistent with the record evidence. (Pl.'s Mem. at 6.) In response, Defendant argues that the ALJ properly considered and analyzed Dr. Veech's opinion and that a reasonable mind could reach the same conclusion as the ALJ. (Defendant's Motion for Summary Judgment and Brief in Support Thereof at 9-14 (ECF No. 13) ("Def.'s Mem.").)

For the reasons set forth below, this Court finds that the ALJ properly assessed the medical opinion evidence in accordance with the regulations and that substantial evidence supports the ALJ's residual functional capacity findings. Therefore, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 12) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 13) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

## I.  PROCEDURAL HISTORY

Plaintiff had previously been found disabled beginning May 12, 2011. (Administrative Record ("R.") at 107.)[2] However, on March 27, 2015, Plaintiff was determined to no longer be disabled. (R. at 107.) On October 31, 2018, an ALJ upheld the determination that his disability ended on March 27, 2015. (R. at 117.)

This case stems from Plaintiff's subsequent application for SSI benefits, filed on May 21, 2020. (R. at 136.) Plaintiff's claim was denied on September 25, 2020 and again upon reconsideration on July 16, 2021. (R. at 17, 147, 162-63.) Following Plaintiff's written request,

---

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for the year of birth), and financial account numbers from this Report and Recommendation. The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

the ALJ held a hearing on Plaintiff's claim on March 10, 2022. (R. at 17.) At the hearing, Plaintiff amended the alleged disability onset date from May 13, 2011 to May 21, 2020. (R. at 17, 90.)

In his application, Plaintiff alleged that he suffers from a left knee injury, thyroid problems, back problems, arthritis, low vision/cataracts, sleep apnea, and high blood pressure. (R. at 126-27.) At the time of the amended onset date, Plaintiff was forty-nine years old. (R. at 126.) The application failed to list previous employment.

On May 17, 2022, the ALJ issued a written opinion, holding that Plaintiff was not disabled under the Social Security Act (the "Act"). (R. at 17-26.) Plaintiff requested review of the ALJ's decision. (R. at 225-26.) On November 16, 2022, the SSA Appeals Council denied the request, rendering the ALJ's decision the final decision of the Commissioner. (R. at 1-4.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.     STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* at (d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ must review the claimant's current work activity to determine if he has been participating in substantial gainful

activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ must ask whether the claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the ALJ must determine whether the medical impairment(s) meet or equal an impairment listed in the regulations. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's residual functional capacity ("RFC"), which accounts for the most that the claimant can do despite his impairments. *Id.* §§ 404.1545(a), 416.925(a).

At step four, the ALJ must assess whether the claimant can perform his past employment given his residual functional capacity. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis: he must prove that his limitations preclude him from performing his past relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472. If such past work can be performed, then benefits will not be awarded, and the analysis ends. 20 C.F.R §§ 404.1520(e), 416.920(e). However, if the claimant cannot perform his past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The Commissioner usually offers this evidence through the testimony of a vocational expert. *Mascio*, 780 F.3d at 635.

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio*, 780 F.3d at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *See Hancock*,

667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion. *Id.*

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see Craig*, 76 F.3d. at 589. The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If a fact is supported by substantial evidence, the reviewing court must affirm, regardless of whether the court agrees with such findings. *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)). If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the reviewing court must reverse the decision. *See Breeden*, 493 F.2d at 1007.

### III.   THE ALJ'S DECISION

The ALJ analyzed Plaintiff's disability claim in accordance with the five-step evaluation process. (R. at 17-26.) *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio*, 780 F.3d at 634 (describing the ALJ's five-step sequential evaluation). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 21, 2020 (the alleged onset date). (R. at 20.) At step two, the ALJ determined Plaintiff suffered from the following severe

impairments: obstructive sleep apnea, status post-nasal cancer and treatment, degenerative disc disease, and peripheral neuropathy. (R. at 20.) At step three, the ALJ determined that Plaintiff does not have an impairment, individually or in combination, which met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21.)

The ALJ then determined Plaintiff's RFC. (R. at 22.) Based on the evidence in the record, the ALJ determined that Plaintiff retains the ability to perform a range of light work as defined in 20 CFR 416.967(b) with the following limitations:

> [Plaintiff] is able to lift and/or carry up to 10 pounds frequently, and up to 20 pounds occasionally; [Plaintiff] is able to sit up to six hours in an eight-hour workday, and can stand or/or walk up to six hours; [Plaintiff] can frequently balance, and can occasionally climb ramps or stairs, kneel, crouch, or crawl, but can never climb ladders, ropes, or scaffolds; and [Plaintiff] can have occasional exposure to humidity, wetness, dusts, odors, fumes, and pulmonary irritants.

(R. at 22.)

The ALJ explained that he determined Plaintiff's RFC after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p." (R. at 22.) Specifically, while Plaintiff claimed an inability to work due to chronic pain and reduced function from his prior cancer treatment, Plaintiff testified at the hearing that he "has no issues performing self-care, showering, bathing, cooking, shopping, and laundry, and is able to use public transportation to go shopping and attend appointments, even though the bus is three blocks from his house." (R. at 22-23.) "After careful consideration of the evidence" and with supporting citations to the record, the ALJ found that "there is no indication of cancer recurrence or significant respiratory issues when [Plaintiff] is awake" and that Plaintiff's "degenerative changes are described as minimal, with only mild neural foraminal narrowing" and "normal or only slightly

reduced strength and sensation in [Plaintiff's] extremities during treatment visits." (R. at 23.) The ALJ determined that Plaintiff's "obstructive sleep apnea and status post-nasal cancer and treatment primarily cause his exertional, postural, and environmental limitations" and that his "degenerative disc disease and peripheral neuropathy contribute to his exertional and postural limitations." (R. at 23.) However, the ALJ also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (R. at 23.)

The ALJ also "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.920c." (R. at 22.) The ALJ considered opinions from two state agency medical consultants, one who opined that Plaintiff "could perform light work but could only frequently stoop and could only occasionally climb, kneel, crouch, or crawl" and another who opined that Plaintiff "could perform light work but could only frequently climb ramps or stairs, balance, or crawl, and could only occasionally climb ladders, ropes, or scaffolds, or stoop." (R. at 24.) The ALJ found these opinions generally consistent with the record evidence previously analyzed by the ALJ but found that Plaintiff had "additional environmental limitations due to his impairments in combination, and greater limitations in climbing" due to Plaintiff's degenerative disc disease and peripheral neuropathy. (R. at 24.) The ALJ, therefore, found the opinions from the state agency medical consultants "generally persuasive, but not persuasive as to [Plaintiff's] climbing and environmental limitations." (R. at 24.)

The ALJ also reviewed an opinion from a physician's assistant and consultative examiner who found that Plaintiff "could perform work at heavy exertion but could only stand or walk up to four hours in an eight-hour workday." (R. at 24.) The ALJ did not find this opinion persuasive

7

because the record evidence previously analyzed by the ALJ established "greater exertional, postural, and environmental limitations." (R. at 24.)

Finally, the ALJ weighed the medical opinion of Plaintiff's treatment provider, Dr. Veech. (R. at 24-25). Dr. Veech submitted two RFC determinations for Plaintiff. On December 21, 2021, Dr. Veech completed an arthritis RFC questionnaire, where he listed Plaintiff's diagnosis as osteoarthritis. (R. at 650.) He concluded that Plaintiff could lift and carry up to 20 pounds frequently and up to 50 pounds rarely; occasionally crouch; rarely twist or stoop; never climb ladders or stairs; and grasp, twist, and turn objects and reach no more than 50 percent of a workday. (R. at 652-53.) He noted that Plaintiff was never likely to miss work due to this condition and that his pain would never impact his ability to concentrate. (R. at 651, 653.) Lastly, Dr. Veech described Plaintiff's "other limitations" as follows: "vision difficulties, lacrimation, back pain, dry mouth, fallen arches," and left elbow tendinitis. (R. at 653.)

Less than a month later, on January 3, 2022, Dr. Veech completed a lumbar spine RFC questionnaire for Plaintiff. (R. at 645-49.) Therein, he listed Plaintiff's diagnosis as "back pain." (R. at 645.) He concluded that Plaintiff could lift and carry up to 10 pounds frequently, up to 20 pounds occasionally, and up to 50 pounds rarely; rarely crouch or stoop; occasionally twist; never climb ladders or stairs; grasp, twist, and turn objects 100 percent of a workday; and reach 20 percent of a workday. (R. at 648.) He noted that it was "unknown, per patient" whether Plaintiff would miss work due to his conditions and that Plaintiff's pain would constantly impact his ability to concentrate (with a handwritten notation that this would vary "per patient"). (R. at 646, 648.) In addition, Dr. Veech opined that Plaintiff could sit for only 20 minutes at a time and for up to 4 hours in an 8-hour workday; stand for only 30 minutes at a time and for less than 2 hours in an 8-

hour workday; walk every 30 minutes during a workday for around 11 minutes; and would need unscheduled breaks for around 15 to 20 minutes each. (R. at 647.)

In considering Dr. Veech's medical opinion, the ALJ explained:

> Dr. Veech's opinions are not generally consistent with the record evidence, which does not establish that [Plaintiff] has a severe impairment of osteoarthritis, and indicates that [Plaintiff's] degenerative disc disease is mild, as noted above. Dr. Veech also does not provide significant evidence in support of his findings in these forms, and his own assessments of [Plaintiff] do not support a finding that [Plaintiff] cannot use his hands for 50 percent of the workday, that he can never climb and can only rarely stoop or crouch, that he experiences constant, chronic pain that interferes with his attention and concentration, or that he is grossly limited in standing, sitting, walking, and that he requires extra breaks and extra walking breaks throughout the workday. Accordingly, the undersigned does not find Dr. Veech's opinions persuasive.

(R. at 25.)

After completing the RFC assessment, the ALJ then determined Plaintiff's vocational factors. He found that Plaintiff had no past relevant work, met the definition of a "younger individual age 18-49" on the date the application was filed, but subsequently "changed age category to closely approaching advanced age," and had at least a high school education. (R. at 25.)

At step five, the ALJ concluded that there were a significant number of jobs in the national economy that Plaintiff could perform given his limitations. (R. at 25-26.) The ALJ adopted the Vocational Expert's testimony that Plaintiff could perform the jobs of marker, cashier II, and router, in accordance with the Dictionary of Occupational Titles. (R. at 26.)

## IV. ANALYSIS

Plaintiff contends that the ALJ erred by failing to adequately explain why he found Dr. Veech's opinion unpersuasive. (Pl.'s Mem. at 5-10.) Specifically, Plaintiff argues that the ALJ

9

neglected to "explain how the supportability and consistency factors were considered in the determination or decision." (Pl.'s Mem. at 6.)

In reviewing the Commissioner's decision to deny Plaintiff's application, the Court must determine whether: (1) the ALJ applied the correct legal standards; and (2) the ALJ's findings are supported by substantial evidence. *Mascio*, 780 F.3d at 634 (citing *Bird*, 699 F.3d at 340). "In reviewing for substantial evidence, [a court must not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). Consequently, as long as the judgment is explained and supported by substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a *de novo* review of the record. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Rhyne v. Astrue*, No. 3:09-cv-412, 2011 WL 1239800, at *3 (W.D.N.C. Mar. 30, 2011).

With this standard in mind, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff is not disabled, that the ALJ properly explained his findings, and that the ALJ's decision was reached upon a correct application of the relevant law.

### A. Evaluating Medical Opinion Evidence for Claims Filed on or After March 27, 2017

Claims involving medical opinion evidence filed on or after March 27, 2017 are evaluated using a revised regulatory framework. This framework applies in Plaintiff's case because he amended the onset date to May 21, 2020. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Plaintiff concedes that the new regulatory framework applies. (Pl.'s Mem. at 5 ("As these claims were filed after March 27, 2017, the new rules apply here.").)

The revised regulations provide that the ALJ will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources, no matter the source. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a).

Under the regulations, the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements. *Id*. §§ 404.1520c, 416.920c(b)-(c). Supportability and consistency are the "most important" factors, and the ALJ must discuss how these factors were considered in the written opinion. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The regulations define supportability and consistency as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. *Id.* § 404.1520c(b)(2), 416.920c(b)(2).

### B. The ALJ Applied Correct Legal Standards in Evaluating Dr. Veech's Opinion and the ALJ's Findings Are Supported by Substantial Evidence

As stated above, the regulations require that the ALJ explain how he considered the consistency and supportability of the medical opinions and why—based on the evidence—the ALJ reached the conclusion he did as to the persuasiveness of the opinions. *See* 20 C.F.R. § 404.1520c(a)–(b). In doing so, the ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Monroe v. Colvin*, 826 F.2d 176, 189 (4th Cir. 2016).

Plaintiff asserts that the ALJ failed to articulate the required factors of supportability and consistency in his analysis of Dr. Veech's opinion. (Pl.'s Mem. at 5-9.) For lack of supportability, Plaintiff contends that the ALJ "made no analysis tied to the evidence in the record, nor did he articulate specific consideration of these factors." (Pl.'s Mem. at 6.) Plaintiff also accuses the ALJ of disregarding Dr. Veech's opinion because it appeared on a check-box form. (Pl.'s Mem. at 7.) For lack of consistency, Plaintiff argues that the ALJ failed to identify what records within the evidence were inconsistent with Dr. Veech's opinion and otherwise "failed to provide any adequate rationalization for his conclusion that Plaintiff did not have the exertional, postural, and manipulative limitations opined by Dr. Veech." (Pl.'s Mem. at 8-9.) The Court disagrees.

The ALJ satisfied the regulations when he found Dr. Veech's opinion not persuasive because it lacked both support from and consistency with the record. Specifically, the ALJ analyzed and referred to the record evidence when considering the limiting effects of Plaintiff's symptoms. (R. at 22-23.) The ALJ then considered the prior administrative medical finding and medical opinions, including Dr. Veech's. (R. at 23-25.) The ALJ summarized Dr. Veech's questionnaires (which the ALJ referred to as "forms"). (R. at 25.) He then noted the discrepancies between the questionnaires themselves and the inconsistencies with other medical evidence on file and previously analyzed. (R. at 25.) As further discussed below, the ALJ's decision complied

with SSR 96-8p, which requires the ALJ to address all medical source opinions and explain why an opinion was not adopted. *See* SSR 96-8p, 61 Fed. Reg. 34,479 (July 2, 1996). Therefore, the Court finds no reversable error.

   *1. Supportability*

Supportability is "the degree to which a provider supports their opinion with relevant, objective medical evidence and explanation." *Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023) (citing 20 C.F.R. § 404.1520c(c)(1)-(2)). Here, the ALJ stated that Dr. Veech "does not provide significant evidence in support of his findings" in these questionnaires. (R. at 25.) The ALJ also found that Dr. Veech's own assessments failed to support his findings that Plaintiff cannot use his hands for 50 percent of the work day due to osteoarthritis,[3] can never climb and can only rarely stoop or crouch, that he experiences constant pain that interferes with his ability to concentrate due to back pain,[4] that he is exceptionally limited in standing, sitting, and walking, and that he requires extra breaks and periods of walking throughout the workday.[5] Indeed, Dr. Veech did not identify any clinical findings, laboratory results, or test results that supported Plaintiff's impairments,

---

[3] While the December 2021 arthritis assessment states that Plaintiff can grasp, twist, and turn objects with his hands only 50 percent of the day (R. at 653), Dr. Veech's January 2022 lumbar spine assessment states that Plaintiff can grasp, twist, and turn objects with his hands 100 percent of the workday (R. at 648).
[4] The December 2021 arthritis assessment states that Plaintiff would "never" experience pain severe enough to impact concentration (R. at 651), whereas the January 2022 lumbar spine assessment states that the impact of Plaintiff's pain on concentration would be "constant" with a handwritten notation that it would vary "per patient" (R. at 646).
[5] The December 2021 assessment states that Plaintiff would not need to take unscheduled breaks during the workday but would need a job that permits shifting positions at will from standing, sitting, or walking. (R. at 652.) The January 2022 assessment states that Plaintiff could only walk 10-12 blocks without rest or severe pain, could only sit for 20 minutes at a time, could only stand for 30 minutes at a time, and could only sit for about 4 hours in an 8-hour workday and stand or walk for less than 2 hours. (R. at 647.) The January 2022 assessment also stated that Plaintiff would need unscheduled breaks throughout the day and that he would need a job that permits shifting positions at will. (R. at 646-47.)

13

identified only tenderness and a reduced range of motion as positive objective signs related to back pain, and otherwise reported Plaintiff's symptoms as "per patient." (R. at 645-53.) Therefore, the Court finds substantial evidence supports the ALJ's conclusion that Dr. Veech's opinion lacks support.

While Plaintiff argues that the ALJ "disregard[ed] Dr. Veech's opinion because it was submitted on a check-box form," (Pl.'s Mem. at 7), the record discussed above shows otherwise. The form itself invited Dr. Veech to identify or attach clinical findings, laboratory results, test results, positive objective signs, and other information supporting his opinions. (R. at 645-53.) Dr. Veech had sufficient opportunity to support his conclusions with supporting record evidence, other documentation, or notations on the questionnaires themselves. In fact, Dr. Veech wrote his own commentary throughout the questionnaires, in addition to filling in the provided blank spaces. Moreover, the ALJ considered Dr. Veech's opinions alongside other record evidence in assessing both their supportability and consistency. Thus, the Court finds Plaintiff's argument and supporting case law regarding the validity of a check-box form unavailing in this case.

Plaintiff next challenges the ALJ's findings based on his alleged failure to consider Dr. Veech's role as Plaintiff's coordinator of care in his treatment via the Veteran's Administration. (Pl.'s Mem. at 8.) Plaintiff contends that Dr. Veech oversaw treatment pertaining to Plaintiff's previous nasal cancer and other issues with his colon and bladder and that the ALJ must consider such clinical treatment records in assessing Dr. Veech's opinion. (Pl.'s Mem. at 8.) The argument fails for multiple reasons. First, Dr. Veech's questionnaires addressed limitations related to Plaintiff's arthritis and lumbar spine issues, not Plaintiff's previous medical conditions relating to his nasal cancer, colon, or bladder. Second, under the revised regulatory framework applicable to Plaintiff's claim, the ALJ need not give controlling weight to a treating physician's opinion. 20

14

C.F.R. §§ 404.1520c(a), 416.920c(a).   Third, while the revised regulations allow the ALJ to consider the medical source's relationship with the claimant, they do *not* require the ALJ to explain how that factor was considered in the opinion.  *See* 20 C.F.R. § 416.920c(b)-(c) (emphasis added).  For these reasons, the ALJ applied the proper standards in weighing Dr. Veech's opinion and considering its supportability.

### 2. Consistency

Consistency is "the degree to which a provider's opinion is consistent with the evidence of other medical and non-medical sources in the record." *Oakes*, 70 F.4th at 212 (citing 20 C.F.R. § 404.1520c(c)(1)-(2)).  The ALJ stated that Dr. Veech's opinions are "not generally consistent with the record evidence, which does not establish that [Plaintiff] has a severe impairment of osteoarthritis, and indicates that [Plaintiff's] degenerative disc disease is mild, *as noted above*." (R. at 25 (emphasis added).)  Thus, the ALJ specifically references his earlier discussions of these impairments.

The ALJ had previously found little to no evidence provided in the record regarding Plaintiff's osteoarthritis.  (R. at 20-21).  The ALJ referenced a knee x-ray reporting no effusion. (R. at 20, 402.)  The ALJ also considered the prior 2018 ALJ decision, which noted osteoarthritis in Plaintiff's left knee while acknowledging rehabilitation and conservative treatment resulted in only a limit to kneeling or crawling.  (R. at 113).  In weighing the prior 2018 opinion, the ALJ stated that there is "little indication in the record that [Plaintiff] is unable to kneel or crawl, based on the record and his statements regarding his daily activities." (R. at 24.)  Indeed, Dr. Veech's own opinion stated that Plaintiff's prognosis for osteoarthritis is "good" and that Plaintiff could rarely stoop, but occasionally bend.  (R. at 650, 652.)  And again, Plaintiff testified at the hearing that he had no issues performing self-care, showering, bathing, cooking, shopping, and doing

laundry, and could use public transportation even though the bus is three blocks from his house. (R. at 22-23.)

Regarding Plaintiff's back pain, the ALJ's decision previously cited portions of the record to support his conclusions regarding exertional and postural limitations stemming from Plaintiff's degenerative disc disease. (R. at 23.) While the ALJ acknowledged record evidence showing degenerative changes and frequent complaints of back pain, he also discussed record evidence supporting such changes as mild or minimal. (R. at 23.) Specifically, VCU Health records account for multiple cervical and lumbar spine examinations from 2021 to 2022. (R. at 1099-1105.) Doctors found "minimal multilevel degenerative changes," (R. at 1104, *see also* R. at 1100 (citing "minimal degenerative change present in the lumbar spine")), "no significant disc height loss," (R. at 1101), and "mild disc bulge[s]." (R. at 1101, 1103.) A report from May 18, 2021 noted that Plaintiff's "[d]isc spaces are preserved overall, with only minimal degenerative change present in the lumbar spine." (R. at 1099, 1100.)

While Plaintiff argues that the ALJ erred by not providing specific citations to the records deemed inconsistent with Dr. Veech's opinion (Pl.'s Mem. at 9), the Court finds otherwise. Although the ALJ does not provide a citation in the paragraph weighing Dr. Veech's opinion, he clearly references and incorporates other portions of his findings "as noted above" which discuss the record evidence. In doing so, the ALJ properly "buil[t] an accurate and logical bridge" from the evidence to his conclusion, *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018), and allowed for meaningful judicial review. *Mascio*, 780 F.3d at 636. The Court cannot re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. *Mastro*, 270 F.3d at 176. Instead, the Court is charged with ensuring the ALJ followed the law. Here, the

16

ALJ considered the consistency of Dr. Veech's opinions with the other evidence on the record and found Dr. Veech's opinion inconsistent and unpersuasive. The Court finds no error in that result.

## V.    CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 12) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 13) be GRANTED, and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge Roderick C. Young and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ _____

Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: November 3, 2023